IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2248-WJM

DARLENE ROMO, formerly known as Darlene Sigala,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Darlene Romo ("Romo") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Romo was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision is affirmed.

## I. BACKGROUND

Romo was born in 1965, and was 45 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 10) at 107, 133.) Romo completed high school and has previously worked as a receptionist, grocery store representative, bank teller, lobby clerk, and certified nursing assistant. (R. at 121, 138).

---

[1] Nancy Berryhill is automatically substituted for Carolyn Colvin under Federal Rule of Civil Procedure 25(d).

Romo filed an application for a closed period of disability and disability insurance benefits with a protective filing date of March 3, 2011. (R. at 133.) Romo alleges that she was disabled between May 25, 2010 through September 30, 2013 due to multiple impairments, including: cervicalgia, cervical fusions, chronic low back pain, spondylolisthesis, nerve pain, bulging disc in low back, depression, high blood pressure, and chronic pain. (R. at 136, 270.) Romo's application was initially denied and she requested a hearing, which was held on June 5, 2012. (R. at 25.) The ALJ, William Musseman, denied benefits on a finding that she was not disabled. (R. at 20.) The Social Security Appeals Council denied review, which made the ALJ's decision the final decision of the Commissioner. (R. at 1.) Romo sought judicial review, and on March 16, 2015 this Court remanded for further proceedings. (R. at 333.) A second administrative hearing was held on September 22, 2015, in front of the same ALJ, William Musseman. (R. at 286.) On October 22, 2015, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. (R. at 270–80.)[2]

At step one, the ALJ found that Romo had not engaged in substantial gainful activity "during the requested closed period: May 25, 2010 through September 30, 2013." (R. at 272.)

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step two, the ALJ found that Romo suffered from the following severe impairments: disorder of the cervical spine, disorder of the lumbar spine, and affective disorder. (R. at 273.)

At step three, the ALJ found that Romo's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations. (*Id.*)

Before proceeding to step four, the ALJ assessed Romo's residual functional capacity ("RFC"). The ALJ concluded that Romo has the RFC to "perform sedentary work" with the following restrictions:

> [W]ith the option to alternate sitting and standing at will and the job can be performed in either position without regard to time spent in either position. The claimant could occasionally bend, squat, or kneel. She could not climb ladders or scaffolds. She could occasionally perform over chest level work, no operation of foot or leg controls. She was limited to unskilled work, characterized as SVP–2 or less.

(*Id.*)[3]

Next, at step four, the ALJ concluded that Romo "is unable to perform any past relevant work." (R. at 278.) Thus, the ALJ proceeded to step five and found that there was work Romo could perform in the national and regional economy, specifically, the

---

[3] Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles ("DOT"), App.C.II., 1991 WL 688702 (4th ed. 1991). The DOT lists an SVP time for each described occupation. *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." *Id.*

3

unskilled jobs of document preparer (SVP-2), lens block gauger (SVP-2), and call out operator (SVP-2). (R. at 279.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

In her appeal, Romo raises three arguments with respect to the ALJ's denial of benefits: (1) the ALJ made findings of fact regarding Romo's RFC that were not supported by substantial evidence; (2) the ALJ failed to apply the correct legal standard when evaluating the medical opinions in the record; and (3) the ALJ improperly assessed Romo's credibility. (ECF No. 13 at 4.) The Court will address each of these arguments in turn below.

4

## A. RFC Assessment

Romo contends that the "ALJ's determination of [her] RFC is not supported by substantial evidence." (*Id*. at 15.) Specifically, Romo asserts that the "physical limitations developed by the ALJ are not consistent with the limitations [opined upon] by either the primary treating physician, Dr. Leppard, nor the consultant examiner Dr. Cutter." (*Id*.) And further, the "ALJ failed to develop the limitations resulting from [Romo's] non-physical problems, including her depression and her problems with maintaining attention and concentration." (*Id*. at 5.)

The RFC is an assessment of a claimant's capabilities in a work setting to determine "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (evidence considered in an RFC assessment may include the claimant's medical history, medical signs and laboratory findings, and medical source statements). The RFC analysis must explain "how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence." *Id*. The ALJ's articulation of a claimant's RFC must include:

> the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id*. The ALJ's findings regarding the RFC must be supported by substantial evidence.

*See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

## 1. Physical Limitations

The ALJ cited three medical opinions regarding Romo's physical functioning: (1) an August 2010 opinion by Dr. Leppard, in which she opines that Romo had extreme limitations, including that she could sit and stand less than an hour at a time and needed frequent breaks (R. at 245–47); (2) a June 2011 opinion by Dr. Cutter, in which she opines that Romo could stand/walk less than 2 hours and could sit for approximately 4 hours with rest breaks (R. at 225); and (3) a July 2011 opinion by a non-examining physician, Dr. McElhinney, in which he opines that Romo had limitations consistent with the ability to perform a range of light work with up to 6 hours of sitting and 4 hours of standing/walking with normal breaks (R. at 53).

Romo maintains that in formulating her RFC the ALJ failed to address her "need for frequent breaks" and "whether [she] was limited to working less than eight hours in a work day." (ECF No. 13 at 9–10.) In response, the Commissioner argues that "the ALJ tempered all three opinions in [Romo's] favor in some respects, finding [Romo] was more limited in lifting than Dr. McElhinney and Dr. Cutter opined; adding limitations on using foot controls and reaching above chest-level that neither Dr. Cutter nor Dr. Leppard imposed; and perhaps most notably, adding an 'at-will' sit-stand option." (ECF No. 14 at 14.)

The Court finds that the ALJ did adequately address rest breaks and the number of hours Romo could sit and stand during an 8 hour workday in formulating her RFC. The record reflects that Romo's limitation to working less than an 8 hour work day was supported only by Dr. Leppard and Dr. Cutter's opinions of Romo's RFC, and the ALJ

found that those opinions merited some or little weight. (*See* R. at 275–276.) The ALJ found that both physicians' sit/stand limitations were not consistent with their objective findings. (R. at 276). To support this finding, the ALJ cited Dr. McElhinney's opinion in which he noted that the "claimant was not having any paraspinal tenderness to palpation that would preclude her from sitting six hours in a normal eight-hour workday with postural shifting as needed. [And further,] the [opinion that she can] stand less than 2 hours and walk less than 2 hours was not logical versus stand/walk for 2 hours, which was not supported because the claimant had full range of motion, full strength and only slight sensation loss so even two hours of stand/walk limitation was not appropriate." (*Id*. (citing R. at 53).)

Because the ALJ's decision not to include these physical limitations in the RFC was based upon his weighing of the evidence, and the record includes at least one other medical opinion that does not require sit/stand and/or frequent rest break limitations, the Court can neither reweigh the evidence, nor find that the ALJ's exclusion of these limitations was not supported by substantial evidence in the record. *See Salazar*, 468 F.3d at 621. Accordingly, the Court finds no reversible error on this issue.

2. <u>Mental Limitations</u>

Romo asserts that the ALJ "failed to account for [her] mental limitations in his RFC." (ECF No. 13 at 14.) To support this assertion, Romo contends that the RFC included "a mere conclusion the Plaintiff is limited to unskilled positions of SVP-2 or less, which does not comply with the directive of the Tenth Circuit Court of Appeals as set forth in *Jaramillo*." (*Id*. (citing *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014)).)

In *Jaramillo*, the Tenth Circuit held that mental limitations must be accounted for with precision in the ultimate determination of the claimant's RFC. 576 F. App'x at 876. This requirement "demands that the ALJ express plaintiff's moderate impairments in mental functioning 'in terms of work-related functions' or 'work-related mental activities.'" *Id*. (quoting SSR 96-8p, 1996 WL 374184 at *6 (July 2, 1996)).

Romo points out that both the consulting psychologist, Dr. Valette, and the non-examining psychologist, Dr. Frommelt, opined that Romo was moderately limited in her ability to maintain attention and concentration. (ECF No. 13 at 13 (citing R. at 51, 228–29).) Thus, Romo contends by analogizing to *Jaramillo* that this limitation should have been accounted for with precision and should not have been "accounted for simply by limiting [Romo] to unskilled jobs or simple, routine and repetitive tasks." (*Id*. at 14.)

The Commissioner argues that *Jaramillo* is "factually distinguishable from this case" because Dr. Frommelt later "used her narrative to translate the moderate ratings from earlier in the form into a concrete limitation, *i.e.*, the limitation to, at most, low semi-skilled work." (ECF No. 14 at 20 (citing R. at 56).) Further, to support the argument that a limitation to unskilled work can account for moderate deficits in concentration, the Commissioner cites a more recent and analogous Tenth Circuit decision, *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016).

In *Smith*, the Tenth Circuit held that the ALJ sufficiently accounted for moderate mental findings by the state agency psychologist in the initial section of the form by relying on that psychologist's later narrative conclusion in which she opined about the

8

functional effects of those moderate findings. *Smith*, 821 F.3d at 1268–69 ("Dr. Frommelt applied these assessments, concluding that Ms. Smith could . . . engage in work that was limited in complexity . . . . The [ALJ] arrived at a similar assessment, concluding that Ms. Smith . . . could engage in only simple, repetitive, and routine tasks . . . . Through these findings, the [ALJ] incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments.").

The Court finds *Smith* persuasive. As stated above, Dr. Frommelt translated in narrative format her moderate mental findings into functional limitations. (R. at 56 ("This woman retains the ability to do work of limited complexity that could be learned in three months['] time.").) Accordingly, the Court finds that the ALJ properly relied on and encompassed Dr. Frommelt's functional limitation in assessing Romo's RFC by limiting her to an even more restrictive functional limitation—"unskilled work." (*See* R. at 277.) Thus, the Court finds no reversible error on this issue.

**B.  Weighing of Medical Evidence**

Romo faults the ALJ for accepting the opinion of the reviewing agency physician, Dr. McElhinney, over that of the treating physician, Dr. Leppard. (ECF No. 13 at 15.) Specifically, Romo asserts that Dr. Leppard's opinion should have been given controlling weight, and that the ALJ gave unsupportable reasons for "discounting the medical opinion evidence of Dr. Leppard." (*Id*. at 17.)

"An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R.

9

§ 404.1527(d). *See id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted).

The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins* , 350 F.3d at 1301(internal quotation marks and brackets omitted).

Further, the opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759–60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is
> well-supported by medically acceptable clinical and
> laboratory diagnostic techniques. If the answer to this
> question is "no," then the inquiry at this stage is complete. If
> the ALJ finds that the opinion is well-supported, he must
> then confirm that the opinion is consistent with other
> substantial evidence in the record. In other words, if the
> opinion is deficient in either of these respects, then it is not
> entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 1996 WL 374188 (July 2, 1996)).

A finding that a treating physician's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 (July 2, 1996). If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

As noted above, the ALJ reviewed Dr. Leppard's August 2010 opinion regarding Romo's physical capacities. (R. at 275.) The ALJ noted that Dr. Leppard had been Romo's pain management treatment provider since at least August 2008. (R. at 274.)

The Commissioner contends that the "ALJ provided several valid reasons for finding that [Romo] was not as limited as Dr. Leppard opined in some areas." (ECF No. 14 at 14.) At the start of his analysis, the ALJ noted that Dr. Leppard last treated Romo on May 19, 2010, which was before the start of the disability period. (R. at 275.) The ALJ further discounted her opinion because there was "no indication in the pain management records that the claimant was ever asked to perform any activities that support the functional analysis Dr. Leppard provided." (*Id*. at 275.) Additionally, as noted earlier, the ALJ attributed little weight to her opinion based on the ALJ's reliance

11

on Dr. McElhinney's finding that "the limitations suggested by Dr. Leppard were not consistent with her objective findings. The claimant was not having any paraspinal tenderness to palpation that would preclude her from sitting six hours in a normal eight-hour work day . . . ." (R. at 276.) The ALJ also cited some inconsistencies between the objective evidence and Dr. Leppard's opinion, first the ALJ found that a limitation regarding squatting was not warranted given that "the consultative examiner observed the claimant squat to pick up an item with no indication of observable pain." (R. at 275.) Second, the ALJ noted that "despite the lumbar findings, Dr. Leppard fails to limit the use of foot controls and driving, also contraindicated by pain medication." (*Id*.) Lastly, the ALJ found Dr. Leppard's opinions inconsistent with Romo's reports of functioning. (*Id*.)

Thus, the ALJ indicated that Dr. Leppard's opinions regarding Romo's physical capacities were inconsistent with her own objective findings and with Dr. McElhinney's opinion. Therefore, the Court finds that the ALJ applied the correct legal standard required to find a treating doctor's medical opinion not entitled to controlling weight, and that his analysis was supported by substantial evidence.

However, the ALJ not only found that Dr. Leppard's opinions did not control; he gave them "little weight." (*Id*.) As stated above, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927 as applicable. On this record, the Court finds that the ALJ applied the correct legal standard and considered all six factors, including: (1) that Dr. Leppard had treated Plaintiff since at least August 2008; (2) that Dr. Leppard served as her pain management provider, but had not treated her for pain management

during the disability period; (3) there were inconsistencies between Dr. Leppard's opinions and her own objective findings; (4) there were inconsistencies between Dr. Leppard's opinions and the record as a whole; (5) Dr. Leppard was a specialist in pain management; and (6) other factors contradicting Dr. Leppard's opinions, including Plaintiff's own testimony regarding her functioning level. (R. at 274–77.)

Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of Dr. Leppard's opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record. *See Lax*, 489 F.3d at 1084. Accordingly, the ALJ's decision to give Dr. Leppard's opinion "little weight" was not reversible error.

**C.    Credibility Assessment**

Romo asserts that the "ALJ failed to apply the proper legal standard in assessing [her] credibility." (ECF No. 13 at 22.)

In evaluating a claimant's subjective testimony of disabling pain, the ALJ must consider the following:

> (1) whether the Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and
> (3) whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Thompson*, 987 F.2d at 1488 (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987)).

Further, at step three, the ALJ should consider the following factors in weighing a claimant's subjective statements:

> (1) [t]he individual's daily activities; (2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) [f]actors that precipitate and aggravate the symptoms; (4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3; *see also Hamlin*, 365 F. 3d at 1220. However, the ALJ is not required to explicitly address each and every factor.

Here, the ALJ found that Romo had established a pain-producing impairment via the objective medical evidence and that Romo's impairments were reasonably expected to produce some pain. (R. at 273–74.) However, as to step three, Romo contends that the "ALJ's failure to consider [her] testimony, particularly in light of the corroborating notes in the record, was a misapplication of the proper legal standards in assessing a Claimant's credibility." (ECF No. 13 at 23.) Romo further asserts that her testimony was only given limited credibility because she had gone back to work full-time and that the "ALJ failed to note any other reason for limiting [her] credibility." (*Id*. at 23–24.)

The Court disagrees with Romo. In assessing Romo's allegations of pain and limitation, the ALJ did consider a variety of factors. For example, the ALJ considered treatment other than prescription medication, namely trigger point injection and physical therapy (R. at 275), and the ALJ considered measures other than formal treatment that Romo uses to provide relief, namely that she "tries to walk on flat ground because that

14

relieves her back pain" (R. at 274). Lastly, the ALJ did consider her daily activities, to the extent that this included her return back to work—part time in 2012, and then a transition to full time in 2013. (*See id*.) The ALJ noted that at her job "she performs tasks such as filing, pulls small parts for delivery, prepares, prints, and separates paper invoices for the drivers." (*Id*.) The ALJ further noted that Romo "testified that her pain has not changed, yet she is working at a semi-skilled job on a full time basis. Given her testimony, if her pain has not changed, then she would not be able to work a full time semi-skilled job now, or she would have been able to perform this work during the requested closed period." (*Id*.)

Romo takes issue with this finding, arguing that the "mere fact [that she] was able to return to work during a nine month trial period does not support a conclusion that her symptoms are not credible." (ECF No. 13 at 24.) However, the Court finds that the ALJ properly considered Romo's return to work as strong evidence supporting his decision to discount her credibility. *See Lee v. Comm'r of Social Sec.*, 248 F. App'x 458, 461 (3d Cir. 2007) ("We conclude that her return to work to the workforce was appropriately considered by the ALJ in resolving Lee's application for a closed period of disability[.]"); *see also Newbold v. Colvin,* 718 F.3d 1257, 1267 (10th Cir. 2013) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citing claimant's testimony that he was "willing to try a job with exertional requirements applicable to sedentary work" as supportive of the ALJ's credibility determination)).

Accordingly, a review of the record convinces the Court that substantial evidence supports the ALJ's credibility determination and the correct legal standards were applied.

15

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 6th day of September, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge